IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ALLEN DALE TURNER | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:22cv492-KNM |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons below, the Commissioner's final decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income on December 22, 2020, alleging a disability onset date of January 1, 2016.[1] The application was denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a telephone hearing on May 17, 2022, and issued an unfavorable decision on May 26, 2022. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on October 18, 2022. Plaintiff then filed this lawsuit on December 20, 2022, seeking judicial review of the Commissioner's decision.

---

[1] At his hearing, Plaintiff amended the alleged disability onset date to the date the application was protectively filed—December 22, 2020. Administrative Record, ECF 5-2, at *52 (Bates stamp p. 51).

**STANDARD**

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a

claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment"

3

is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given her impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing her past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that she was disabled on or before the last day of her insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows

that she cannot perform her past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in her May 26, 2022 decision:

1. The claimant has not engaged in substantial gainful activity since December 22, 2020, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the joints, major depressive disorder, and generalized anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following: He can understand, remember, and carry out simple tasks. He can make simple work-related decisions or judgments. He can maintain attention, concentration, and pace sufficiently to perform simple work tasks. He can tolerate occasional workplace changes. He can have frequent, but not constant, interaction with supervisors, co-workers, and the general public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on October 18, 1971 and was 49 years old, which is defined as a younger individual age 18–49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has at least a limited education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 22, 2020, the date the application was filed (20 CFR 416.920(g).

**ADMINISTRATIVE RECORD**

*Administrative Hearing*

Plaintiff testified at his hearing before the ALJ on May 17, 2022. Plaintiff testified that his prior work includes warehouse jobs at Wal-Mart. Plaintiff stated that he attended five sessions of physical therapy for neck and back pain, but he did not see any improvement in his pain level or mobility. He has good days and bad days with his good days estimated to be a five or six on a pain scale. Plaintiff also estimated that he has five or six bad days per week and one or two good days.

Plaintiff testified that he is up and down a lot trying to get comfortable. He helps his mother when he can by taking her to Wal-Mart and medical appointments. Plaintiff estimated that he drives two hours to some of his mother's appointments and it bothers his low back. He stated that he also uses a riding lawnmower to mow the yard, but it takes him several days to complete the task due to the bouncing and vibration. Plaintiff testified that he was told he could have surgery or injections for his neck. He has remained on his pain medications with the only change being an adjustment in dosage of Meloxicam.

Plaintiff stated that he wears braces on both of his wrists to help with activities such as lifting. He estimated that he can be on his feet for up to one hour at a time or sit for one hour at a time. He also estimated that he sleeps for two to three hours at a time before needing to move around. Plaintiff stated that he can lift and carry a twelve-pack of soda or a gallon of milk. He described stiffness and cramping when using his hands and radiating pain from his neck to low back during lifting. He stated that he has difficulty squatting. Plaintiff opined that his consistent pain level with medication—Tramadol and Meloxicam—is a seven or six-and-a-half out of ten.

He testified that he does not take medication regularly during the day because he does not like taking medication and doesn't "like the drugs in general."[2]

Plaintiff testified that he gets irritable if he is around more than three or four people at one time. He stated that he has occasional episodes of anxiety where he is shaky and sweaty with mood swings and difficulty communicating. Plaintiff explained that he has difficulty managing anger and sadness at random times and problems with his memory.

A vocational expert witness, Mary Downing, also testified at Plaintiff's hearing. Ms. Downing described Plaintiff's past work to include: (1) warehouse worker, DOT 922.687-058, SVP 2, medium; (2) stock clerk, DOT 299.367-014, SVP 4, heavy; and (3) order filler, DOT 222.487-014, SVP 3, light. The ALJ presented Ms. Downing a hypothetical individual of Plaintiff's age, education, and work experience who can perform work at the light exertional level with the following limitations: he can understand, remember, and carry out simple tasks, he can make simple, work-related decisions or judgment, he can maintain attention, concentration, and pace sufficiently to perform simple work tasks, he can tolerate occasional workplace changes, and he can have frequent, but not constant, interaction with supervisors, coworkers and the public. Ms. Downing testified that the hypothetical individual could not perform any of Plaintiff's past work. She identified the following jobs that would be available to the hypothetical individual: (1) silver wrapper, DOT 318.687-018, SVP 1, light, with 12,038 jobs in the national economy; (2) cleaner, DOT 323.687-014, SVP 2, light, with 222,086 jobs in the national economy; and (3) marker, DOT 209.587-034, SVP 2, light, with 129,337 jobs in the national economy.

The ALJ presented Ms. Downing a second hypothetical adding that the individual will need additional rest breaks consisting of two additional unscheduled breaks of fifteen minutes each in

---

[2] *Id*. at *62 (Bates stamp p. 61).

duration. Ms. Downing testified that an individual with those limitations would not be able to engage in competitive employment. In addition, if the individual is consistently missing two days of work per month, Ms. Downing stated that there would be no competitive employment in the national economy. Similarly, if the individual's limitations are reduced to the sedentary level, the identified light work jobs would not be available and the individual's past work would not provide any transferable skills.

*Medical Record*

Plaintiff had a six-month follow-up with Jennifer Wilson, DO, on May 4, 2020. Plaintiff reported taking Tramadol PRN for pain and Zoloft and Buspar for depression and anxiety. On examination, Plaintiff had normal mood and affect and normal behavior. Dr. Wilson noted that Plaintiff was compliant with chronic opioid therapy and reported improvement in his ability to perform activities of daily living, have a reasonable quality of life and perform duties needed for care of dependents while on his medication.[3]

Michelle Cook, FNP-C, examined Plaintiff on August 12, 2020 for a right wrist injury. Plaintiff reported that he injured his wrist on July 24, 2020 in a fall and received a splint in the ER. Plaintiff described itching and throbbing pain. An X-ray showed a slightly impacted comminuted intra-articular distal radius fracture with no significant angulation. Plaintiff expressed a preference to avoid surgery if possible. He was placed in a padded short arm cast. At a follow-up visit on September 9, 2020, Plaintiff reported no problems with swelling, numbness or tingling in his fingers. Ms. Cook noted that Plaintiff was happy with his progress and that he could avoid surgery. She provided Plaintiff with a wrist brace for support and exercises to perform to work on motion. Plaintiff returned on October 21, 2020 and reported no problems with his wrist injury. He stated

---

[3] Administrative Record, ECF 5-7, at *17 (Bates stamp p. 335).

that he was working on his motion and stretching. Ms. Cook noted that Plaintiff was doing well and could wean out of the brace as tolerated.

Plaintiff returned to Dr. Wilson on November 9, 2020 for a medication follow-up. Plaintiff reported shoulder pain and several anxiety episodes lasting approximately five to fifteen minutes each. On examination, Dr. Wilson noted the neck was supple, cardiovascular and pulmonary examinations were normal, musculoskeletal range of motion was normal, and Plaintiff had a normal mood and affect with normal behavior. Plaintiff continued to report compliance with chronic opioid therapy with improvement in his activities of daily living.

Plaintiff had a consultative mental status examination by Ashley Gartner, Psy.D., on April 12, 2021. He presented as cooperative in answering questions with the examiner and attempted to complete tasks requiring minimal cognitive investment. He exhibited poor hygiene and grooming. Plaintiff reported irritable mood and loss of interest in most activities. On examination, Plaintiff's thought processes appeared somewhat tangential. He did not report any suicidal ideation or current plan or intent to harm others, or any visual or auditory hallucinations. Plaintiff presented an irritable, depressed, and anxious mood with a labile affect and fair eye contact. Dr. Gartner estimated Plaintiff's intelligence to be average and determined his remote memory was satisfactory, while his short-term memory was below average. Plaintiff was able to spell both forward and backward and name the months of the year in reverse order, but he was slow to respond at times. Plaintiff exhibited satisfactory insight and judgment.

Dr. Gartner diagnosed major depressive disorder, recurrent episode, moderate, and generalized anxiety disorder. She rated Plaintiff's prognosis as guarded, with symptoms that are chronic and likely to persist and that are likely to continue to hinder his functioning in social and occupational contexts. Dr. Gartner noted significant deficits in remembering and comprehending

multi-step instructions, making work-related decisions, persisting in work-related activity at a reasonable pace, maintaining effective social interaction with supervisors, coworkers, and the public, and coping with normal levels of stress and regulating his emotions and behavior in a work environment.  She concluded that Plaintiff is able to manage his benefits.

State agency psychological consultant Joshua Boyd, Psy. D., reviewed the medical records and completed an assessment on April 30, 2021, concluding that Plaintiff has limitations in understanding and memory, social interaction and adaption.  On reconsideration, Heather Bradley, Ph.D., agreed with Dr. Boyd's assessment.

State agency medical consultant Kavitha Reddy, M.D., also reviewed the medical records and completed an assessment on April 20, 2021.  Dr. Reddy opined that Plaintiff retains the physical residual functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday with unlimited push and pull except as limited by lift and carry limitations.  Dr. Patty Rowley agreed with Dr. Reddy's assessment on September 22, 2021.

At a medication follow-up examination on May 10, 2021, Dr. Wilson noted that Plaintiff reported agitation, depressed mood and nervousness/anxiousness.  Her examination notes again found normal mood and affect with normal behavior, supple neck, normal cardiovascular and pulmonary examinations, normal musculoskeletal range of motion, and compliance with chronic opioid therapy.  Dr. Wilson encouraged Plaintiff to seek an evaluation at the Andrew's Center.  Plaintiff returned for a follow-up on November 10, 2021 and reported feeling mad all the time and avoiding interactions with other people.  Plaintiff also complained of back pain and joint problems.  On examination, Plaintiff's musculoskeletal range of motion was normal and Dr. Wilson noted a normal mood and affect with normal behavior.

Plaintiff received an initial evaluation for chronic neck and low back pain with Travis Squyres, FNP, at the Texas Pain Network on January 4, 2022. Plaintiff reported pain and stiffness in the cervical region, lumbar pain, and facet lumbar tenderness. On examination, Plaintiff's cranial nerves II-XII were grossly intact and he was able to move all extremities with motor and sensation grossly intact. The cervical spine showed pain with palpation of the posterior facet columns, decreased active range of motion, and pain with active facet loading. The lumbar spine showed pain over lumbar facet columns bilaterally, decreased range of motion with flexion and extension and pain with facet loading, but motor function was fully intact. FNP Squyres prescribed Mobic, cyclobenzaprine, and physical therapy. An X-ray of the cervical spine on January 18, 2022 revealed cervical spondylosis with no acute osseous cervical spine abnormality. An X-ray of the lumbar spine on the same date showed anatomic lumbar vertebral body alignment with no acute fracture or subluxation. Plaintiff returned to FNP Squyres on February 14, 2022. FNP Squyres reviewed the X-ray findings and noted that the lumbar images were normal and cervical imagining showed degenerative changes between C4-C7 with no motor deficits. FNP Squyres refilled medications and recommended continued physical therapy, but he noted that Plaintiff stated he would not be able to follow-up due to financial constraints.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff presents two issues for review: (1) whether the ALJ's decision fails to perform more than a perfunctory analysis of Plaintiff's inability to treat his conditions due to financial constraints, provides no evidence suggesting Plaintiff could afford treatment, and ultimately denies the claim, in large part, due to the lack of treatment; and (2) whether the ALJ's mental RFC determination is not supported by substantial evidence as the ALJ improperly evaluated the opinion of Dr. Gartner. Plaintiff alleges that the ALJ improperly relied on his lack

12

of medical treatment to discount his subjective complaints and the medical opinion evidence. Plaintiff submits that his inability to afford necessary treatment is well documented in the record, yet the ALJ noted that his limited treatment does not support the level of restrictions asserted. Plaintiff additionally submits that the ALJ used his lack of treatment to discredit Dr. Gartner's opinion. Further, Plaintiff contends that the ALJ did not properly articulate how she considered Dr. Gartner's opinion by failing to provide specific citation in the record to support her conclusions or specify how evidence in the record detracted from Dr. Gartner's opinion.

In response, the Commissioner argues that the ALJ properly considered Plaintiff's failure to seek subsidized care for both his mental and physical health, despite recommendations from his treating providers to seek care at the Andrews Center and Bethesda Clinic. The Commissioner asserts that Plaintiff points to these referrals in the record, but he fails to acknowledge that he did not seek free or low-cost care from them. As a result of his failure to seek affordable care that was recommended to him, the Commissioner submits that the ALJ properly considered his lack of care, despite his financial constraints. Additionally, the Commissioner argues that the ALJ properly considered the supportability and consistency of Dr. Gartner's opinion. The Commissioner contends that the ALJ explained that the portion of the opinion referring to "significant deficits" was vague due to her failure to define that phrase, identified specific findings in her own examination that did not support her opinion, and pointed to other, specific medical evidence in the record that was inconsistent with her opinion.

Plaintiff's reply brief re-asserts his previous arguments. He argues that the ALJ did not adequately explain her analysis of Dr. Gartner's opinion and relied on cursory, boilerplate language. Plaintiff further asserts that the Commissioner attempts to provide explanations for the ALJ's decision that were not included in the decision.

*Inability to Afford Treatment*

Plaintiff asserts that the ALJ improperly relied on a lack of treatment without considering his inability to afford treatment. In her decision, the ALJ noted that imaging and diagnostic studies in the record, together with physical and mental examination findings, do not support the level of limitations alleged. Similarly, she stated that the lack of hospitalizations, surgeries, emergency room visits, or urgent care clinic visits for his conditions did not support the severity of limitations asserted by Plaintiff. The ALJ recognized statements in medical notes referring to Plaintiff's financial constraints on treatment, but opined that, "[t]aken as a whole, the general lack of significant musculoskeletal and neurological abnormalities, the imaging studies showing relatively minor positive findings, even considering the claimant's insurance and financial situation, are inconsistent with the claimant's allegations of a substantially limiting physical impairment throughout the relevant period."[4] Further, the ALJ considered the lack of hospitalizations and significant treatment for Plaintiff's mental conditions. She expressly considered Plaintiff's failure to follow up on recommendations to seek treatment at the Andrews Center, a nonprofit providing free community mental health services.[5]

A medical condition that would not be disabling with appropriate surgery, treatment or medication may nevertheless be disabling for a claimant who cannot afford that treatment. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). The claimant must show both that he "cannot afford the prescribed treatment or medicine" and that he "can find no way to obtain it." *Id*. The assessment of a plaintiff's inability to pay for medical care is not necessary if there is no finding that treatment of his impairments would restore his ability to work. *Elam v. Barnhart*, 386 F.Supp.2d 746, 758 (E.D.Tex. Sept. 9, 2005).

---

[4] Administrative Record, ECF 5-2, at *30 (Bates stamp p. 29).
[5] *Id*. at *31 (Bates stamp p. 30).

14

Here, the ALJ did not make any findings based on an assumption that Plaintiff's condition would be improved with more treatment. Instead, the ALJ considered Plaintiff's condition as is, including management with medication and no counseling sessions, surgery, injections, emergency room visits, or hospitalizations. Notably, the ALJ's decision focuses on the lack of support for the severity of limitations alleged by Plaintiff in the objective medical findings and examinations, even considering Plaintiff's lack of insurance and financial resources. The lack of treatment is noted as additional support for the conclusion that Plaintiff's limitations are not as severe as alleged and that he has only required conservative care. The ALJ properly considered Plaintiff's failure to seek out free or low cost care that was repeatedly recommended to him by his treating providers. Plaintiff has not shown that the ALJ erroneously failed to consider his financial limitations.

*Opinion Evidence*

Plaintiff also asserts that the ALJ improperly considered Dr. Gartner's opinion evidence. The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed his application on December 22, 2020. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."

The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*. Concerning "supportability," the regulation provides "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source

15

are to support his or her medical opinion or prior administrative medical finding, the more persuasive the medical opinion or prior administrative medical finding will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ thoroughly summarized Dr. Gartner's evaluation in the synopsis of the medical record and later addressed Dr. Garner's opinion in her evaluation of opinion evidence and prior administrative findings.[6] The ALJ opined that Dr. Gartner's opinion that Plaintiff has significant deficits related to remembering and comprehending multi-step instructions, making work-related decisions, persisting in work-related activity at a reasonable pace, maintaining effective social interaction, and coping with normal levels of stress and regulating his emotions is not persuasive. She explained that the opinion is "too vague especially given that 'significant deficits' were not defined by the clinician," and that significant deficits are "not supported by her own mental status findings since his immediate memory testing was satisfactory, his concentration testing was unremarkable except for some slowness, and he was reported cooperative."[7] The ALJ further pointed out that these deficits are not consistent with medical evidence in the record showing mental status examinations within normal limits. The ALJ provided citations to the specific inconsistent examination findings. Finally, the ALJ considered that Plaintiff's "medication regimen has been maintained by his primary care provider, he has not required inpatient psychiatric

---

[6] *Id*. at *17–18 (Bates stamp p. 26–27) and *33–34 (Bates stamp p. 32–33).
[7] *Id*.

16

treatment, and, although recommended, he has not sought formal mental health treatment in the last few years, at least."[8]

The ALJ properly considered whether Dr. Gartner's opinion was supported by objective medical evidence, whether her opinion provided sufficient specificity and whether her opinion was consistent with the medical evidence in the record before she concluded that it was not persuasive. In her analysis, the ALJ identified specific examination findings that did not support Dr. Gartner's opinion and specific findings elsewhere in the record that are not consistent with Dr. Gartner's opinion. Plaintiff has not shown that the ALJ failed to properly consider Dr. Gartner's opinion.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)). For the reasons stated, Plaintiff has not shown that the ALJ improperly failed to consider his inability to afford treatment or that the ALJ failed to properly consider the opinion evidence in compliance with the revised regulations. The ALJ's RFC finding is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed. It is therefore

---

[8] *Id*. at *34.

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 26th day of February, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE